**THE JAMES H.**

**MATTHIES v. THE JAMES H et al.**

**No. 16667.**

District Court, E. D. New York.

April 28, 1943.

Maurice M. Kreis, of New York City, for libellant.

Solomon R. Agar, of St. George, S. I., N.Y., for claimant.

GALSTON, District Judge.

The libellant seeks to recover wages for services rendered as a launchman on the Motor Vessel James H.

The facts are somewhat unusual. The libellant is the husband of Augusta Matthies. She and one Frank Alt owned the vessel and the claimant, Pauline Hiby Alt, is the wife of Frank Alt.

The proof establishes that in February, 1942, the James H, then owned in equal shares by Augusta Matthies and Frank Alt, was chartered to the Atlantic Gulf & Pacific Company, at the rate of $2.50 an hour, which was to include the services of an operator. At that time there was a conference held at the home of Mrs. Matthies, participated in by herself, the libellant and the co-owner, Alt. Alt then said that he knew of nobody that he could get to run the boat; that if Matthies would run it he would get wages and the net income would be shared between Mrs. Matthies and himself. Matthies was to receive a dollar an hour, the union wage. Thereupon he became a member of the union.

Alt denied the making of this agreement.

It appears that at the time in question Mrs. Alt had a mortgage in the sum of $2,400 on the Yankee Doodle, another vessel which they jointly owned. The libellant worked from February 26, 1942 until July 23, 1942, during which time no wages were paid him.

Matthies testified that he operated the James H as a launchman during the entire period, working at an average of ten hours a day and seven days a week, a total of 1711 hours. He made his first demand for wages about a week after his conversation with Alt, but was told by Alt that the expenses would have to be paid first. On repeating the demand a week later he was put off with the statement by Alt that he had to pay the mortgage instalment and the expense bills. At the end of the third week he threatened to have the mortgage foreclosed. Eventually it was foreclosed and Matthies received no wages at all.

During that period Alt, who collected the charter hire, paid out $35 a week to his co-owner, retaining an equal amount for himself. When on July 23, 1942 Matthies, being an alien, was compelled to give up his employment, Alt employed other men from time to time to take his place. Then there developed a controversy between the two owners which resulted, on August 31, 1942, in their writing a joint letter to the Atlantic Gulf & Pacific Company, the charterer, directing that company to pay Alt $217.50, and Augusta Matthies $175 for the period up to and including August 23, 1942, and adding that for any charter hire to become due for the services of the James H after August 23, 1942 that company was to pay Alt $90 per week and Augusta Matthies $50 per week. The additional amount which Alt thus received over and above that directed to be paid to his co-owner arose from the fact that he operated the boat from August 23, 1942 on, and was to receive $40 per week for his services. It thus appears that as between the partners, Alt received a wage for services similar to those that had theretofore been rendered by Matthies. That is a situation that cannot be ignored in weighing the credibility of the witnesses. It would seem to lend support to the testimony of Matthies and his wife that he was to receive a wage independently of the net profits that his wife might be paid.

Another circumstance bearing on the matter of credibility is an account kept by Alt. The figures certainly indicate alterations made after the original entries had been posted.

The advances made by Alt for the reconditioning of the James H, and also the sums advanced by Mrs. Alt, are all stated to have been in cash, $3,000 of his money and $2,000 of hers. This money they said was kept in cash in her home, a circumstance just a little short of belief considering the period involved. Of course, we are not here concerned with how much money in fact was paid by Alt for the reconditioning of the James H, nor are we trying out the foreclosure of the mortgage. The case as presented here involves but a very narrow issue—whether in fact an oral agreement was entered into as the libellant claims. On the whole I believe that the version of the talk given by the libellant and his wife is more persuasive than the denial of Alt. On the other hand there is

no record produced of the exact number of hours during which the libellant performed his services as launchman. He testified to a total of 1711, which he arrives at roughly without the aid of a log or other memorandum. An allowance for an eight hour day, for six days a week, would probably be more in conformity with the facts. On that basis, at the rate of a dollar an hour, he would be entitled to receive $1,008, without an allowance for overtime. Mrs. Matthies, in detailing the arrangement of employment, said nothing about an overtime allowance.

Accordingly the libellant may have a decree in the amount indicated, and proper findings of fact and conclusions of law will be filed concurrently with this decision.